# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

---

Case No. 5D2024-1721
LT Case No. 2023-CF-000516

---

CHRISTIEN RYAN JEFFRIES,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

---

On appeal from the Circuit Court for Putnam County.
Alicia R. Washington, Judge.

Matthew J. Metz, Public Defender, and Ali L. Hansen, Assistant
Public Defender, Daytona Beach, for Appellant.

James Uthmeier, Attorney General, Tallahassee, and Tabitha
Mills, Assistant Attorney General, Daytona Beach, for Appellee.

July 31, 2026

WALLIS, J.

    In this direct appeal, Appellant challenges the denial of his
motion to suppress evidence obtained as a result of a citizen's
arrest.  Appellant properly reserved the right to seek review of the
denial of the trial court's dispositive order on the motion.  Because
we find that the citizen's arrest was without lawful basis, we
reverse the trial court's order denying the motion to suppress,

vacate Appellant's judgment and sentence as to the count of possession of an electric weapon by a convicted felon, and remand the case to the trial court for further proceedings in accordance with this opinion.

*Facts and procedural history*

Larry Sapp, an off-duty police officer residing in a county outside his jurisdiction, performed a private citizen's arrest on Appellant, leading to the discovery of an electric stun gun on Appellant's person, among other items seized by responding police. Appellant's counsel filed a motion to suppress this evidence but at the outset of the motion hearing, chose to limit the motion to the charge involving the stun gun only.

At the hearing, Sapp, a Clay County School District police officer, testified that he was at his residence in Putnam County when his daughter came in and stated, without providing specific details, that someone had been trying to break into his patrol car. Sapp went outside and saw Appellant already exiting Sapp's property. Sapp pursued Appellant, identifying himself as law enforcement and ordering Appellant to stop, but Appellant did not do so. Sapp testified that Appellant appeared "delirious" and "like he didn't know . . . whose house he was at." Appellant proceeded into Sapp's neighbor's yard, through the open privacy gate, and into the neighbor's backyard. Sapp did not follow Appellant into the backyard but instead rang the neighbor's doorbell, but no one was at home. Sapp testified that he believed the neighbor had a fence in the backyard of perhaps four feet in height, and he was not aware of any gates back there.

Sapp got in his personal vehicle along with another individual and drove down the road behind the neighbor's house. He spotted Appellant near an apartment complex. Sapp got out of the truck, again identified himself as a law enforcement officer, and ordered Appellant to stop. Sapp testified that even though he was acting outside his jurisdiction, he did not identify himself as a private citizen, as most people would not stop if ordered to do so by a private citizen.

2

Appellant stopped this time and turned towards Sapp. As Sapp approached Appellant, he saw Appellant reach down in his pockets and make a "throwing motion," and something came out of Appellant's hand. Sapp physically restrained Appellant and effected an arrest. Sapp said that at the apartment complex, Appellant was breathing "a little bit rapid" and was sweating, so Sapp believed Appellant was under the influence of something. Sapp said that Appellant kept telling him that he was trying to visit someone at the apartment complex, but a lady who lived there informed him that no such person resided there.

Officer Felbinger responded to the call to police and arrested Appellant based on a discussion with Sapp and the fact that Sapp was a law enforcement officer. Felbinger then found a discarded pill bottle containing various narcotics in the area where Sapp reported the object was thrown. Felbinger searched Appellant's person and found the stun gun. Appellant was charged with multiple counts of possession of controlled substances and one count of possession of an electric weapon or device by a convicted felon. Felbinger explained that he did not arrest Appellant for trespassing as there was no existing trespass warning for Sapp's property; however, Felbinger issued a trespass warning to Appellant that day.

At the motion hearing, Felbinger testified that Sapp also told him at the time that he had seen Appellant approaching an elderly woman at the apartment complex, and the woman insisted she did not know Appellant. Felbinger testified that there was no indication of verbal or physical threats made to this woman by Appellant, but rather Sapp was concerned about her because she was elderly and less able to defend herself if need be. Felbinger included this information from Sapp in his police report.

The trial court denied the motion to suppress. The court indicated orally at the motion hearing that it believed that Sapp conducted a lawful citizens' arrest and also that it believed that the stun gun was lawfully seized as part of a search incident to arrest on the possession charges. However, the trial court's written ruling on the motion to suppress only explicitly stated that the motion was denied because the stun gun was seized as part of a lawful search incident to arrest. Appellant properly reserved the

3

right to seek review of this issue on appeal, and the trial court found the issue dispositive.

*Analysis*

Review of a trial court's ruling on a motion to suppress follows a mixed standard, with findings of fact being reviewed for competent, substantial evidence and conclusions of law being reviewed de novo. *Ross v. State*, 45 So. 3d 403, 414 (Fla. 2010).

A law enforcement officer acting outside of his geographic limits generally has the same arrest powers as a private citizen. *State v. Torres*, 350 So. 3d 421, 424 (Fla. 5th DCA 2022) (citing *Phoenix v. State*, 455 So. 2d 1024, 1025 (Fla. 1984)). A private citizen may perform an arrest if an individual has committed a felony or a breach of the peace in the private citizen's presence. *Johnson v. Barnes & Noble Booksellers, Inc.*, 437 F.3d 1112, 1116 (11th Cir. 2006) (citing *Steiner v. State*, 690 So. 2d 706, 708 (Fla. 4th DCA 1997)); *Torres*, 350 So. 3d at 424.

The State acknowledges in its answer brief that there was no evidence that Sapp observed a felony that day. The State argues instead that Appellant's actions constituted a breach of the peace.

Section 877.03, Florida Statutes, defines breach of the peace as follows:

> Whoever commits such acts as are of a nature <u>to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them</u>, or engages in brawling or fighting, or engages in such conduct as to constitute a breach of the peace or disorderly conduct, shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.

(emphasis added). The definition in this statute is to be interpreted narrowly. *Johnson*, 437 F.3d at 1116 (citing *State v. Saunders*, 339 So. 2d 641, 643 (Fla. 1976)). Conduct that does not amount to more than a creation of a mere annoyance does not

4

constitute a breach of the peace. *See Saunders*, 339 So. 2d at 642 (affirming trial court's dismissal of charges after finding no probable cause to arrest for breach of the peace where defendant was selling newspapers on a street corner, confronting people, and appearing to hassle them); *Gonzales v. City of Belle Glade*, 287 So. 2d 669, 670 (Fla. 1973) (reversing convictions under section 877.03, Florida Statutes, where the defendants participated in a protest march, made threatening comments to officers but did not touch them, and expressed vocal dissatisfaction with restaurant service).

The State relied below and also relies on appeal on a series of actions attributed to Appellant to argue that he committed breach of the peace justifying a citizen's arrest: 1) fingerprints and smudges on Sapp's patrol car; 2) Appellant exiting Sapp's property as Sapp came out of his house; 3) Appellant entering the neighbor's property and backyard through the gate; 4) Appellant appearing to be under the influence of a substance when he was found near the apartment complex; and 5) Appellant having approached an elderly woman at the apartment complex while indicating that he was there to see someone.

First, the fingerprints and smudges that Sapp later photographed on his patrol car cannot be relied upon to justify the citizen's arrest. At the motion hearing, Sapp identified these marks that he photographed on the front end and passenger side mirror of his patrol car. However, these photographs were taken after Appellant's arrest, and it is clear from Sapp's testimony that he did not examine his patrol car before pursuing Appellant. In any event, Sapp did not personally observe Appellant trying to break into his patrol car, and therefore there was no justification here for the citizen's arrest. Likewise, his daughter's informing him that someone had been trying to break into the car was not personal observation to support the citizen's arrest.

Second, Sapp testified that when he exited his home, he saw Appellant already leaving his yard to enter his neighbor's yard. Sapp testified that Appellant seemed "delirious." However, Appellant made no difficulty about leaving, and in fact, was already leaving when Sapp saw him. Felbinger testified that this conduct could have resulted in no more than the trespass warning which Felbinger later delivered to Appellant.

5

Third, Sapp testified that Appellant entered the neighbor's yard and went into the backyard through the open privacy gate as Sapp was pursuing him. While Appellant appeared intoxicated to Sapp at this time, this too did not rise to the level of breach of the peace. Florida case law finding that behavior surrounding intoxication constituted breach of the peace has consistently included conduct that clearly and significantly endangers the public, particularly conduct involving the apparent use of a motor vehicle while intoxicated. *See, e.g.*, *Mattos v. State*, 199 So. 3d 416, 418, 420 (Fla. 4th DCA 2016) (finding that conduct constituted breach of the peace where defendant was found passed out and appearing intoxicated in the driver's seat of a vehicle smelling of alcohol and idling in the middle lane of three lanes of traffic); *State v. Price*, 74 So. 3d 528, 529–531 (Fla. 2d DCA 2011) (finding that conduct constituted breach of the peace where defendant's car made a wide turn, drifted off the white line, sped up and slowed down repeatedly, drifted between lanes, and caused the driver of a semi-truck to take evasive actions and blow his horn); *State v. Furr*, 723 So. 2d 842, 843–845 (Fla. 1st DCA 1998) (finding that conduct constituted breach of the peace where defendant's truck crossed the center dividing line four or five times and where defendant's "behavior and demeanor immediately signaled his state of intoxication"); *Edwards v. State*, 462 So. 2d 581, 582–83 (Fla. 4th DCA 1985) (finding that conduct constituted breach of the peace where defendant's truck was observed crossing the center line multiple times over several miles, causing other drivers to run onto the berm, and where defendant's truck came close to hitting a bridge abutment). Appellant's conduct is distinguishable from this case precedent in that his behavior is devoid of actions that amount to an alleged offense of driving under the influence or other actions endangering the public.

Fourth, Sapp testified that Appellant appeared to be under the influence of a substance when Sapp found him again near the apartment complex. For the same reasons as above, mere apparent intoxication in public does not constitute a breach of the peace.

Fifth, Felbinger testified that Sapp told him that Appellant had approached an elderly woman in the apartment complex

6

common area and that the woman insisted that she did not know Appellant. Felbinger testified that Sapp did not report any threats made to the woman but that Sapp seemed concerned about the woman because of her decreased physical capacity to defend herself should she be threatened. We need not reach the issue of whether Sapp's failure to testify about these observations himself is legally significant, as Appellant's conduct here as reported second-hand also does not constitute breach of the peace. This case is distinguishable, for example, from *Oxyde v. State*, 417 So. 3d 350, 352–55 (Fla. 4th DCA 2025), in which the Fourth District affirmed a conviction for disorderly conduct under section 877.03, Florida Statutes, where the defendant stood outside a locked apartment building late at night where his estranged wife resided yelling profanities at her and other residents, later followed a resident inside, loudly pounded on his wife's unit door yelling profanities, and refused to leave when residents confronted him. In the instant case, it was the middle of the day, and Felbinger did not report that Appellant threatened the elderly woman or even raised his voice.

For all of the above reasons, the conduct Sapp observed did not constitute breach of the peace.

We also write to address the trial court's finding that the seizure of the stun gun in a search of Appellant's person was protected due to a lawful search incident to arrest. We surmise that the trial court based this finding on Felbinger's discovery of the pill bottle in the area where Sapp told him Appellant had thrown it. Because we find that Appellant's abandonment of the pill bottle was involuntary, Felbinger's discovery of the stun gun is not shielded from Fourth Amendment protections as a search incident to arrest.

Whether Fourth Amendment protections extend to contraband thrown during an arrest turns on whether the abandonment was voluntary or involuntary, which in turn depends on whether the arrestee was seized or not at the time of the abandonment. "A person who flees from a show of authority has not been seized, while a person who remains in place and submissive to the show of authority has been seized." *Hollinger v. State*, 620 So. 2d 1242, 1243 (Fla. 1993); *see also California v.*

7

*Hodari D.*, 499 U.S. 621, 626–29 (1991). "An unlawful seizure only takes place if the person either willingly obeys or is physically forced to obey the police request, i.e. there is no unlawful seizure when the person 'drops then stops,' even where the drop occurs after an order to stop." *Johnson v. State*, 640 So. 2d 136, 138 (Fla. 4th DCA 1994).

In *Lang v. State*, 671 So. 2d 292, 293 (Fla. 5th DCA 1996), this Court examined a case where Lang was unlawfully stopped by police while on foot. The deputy pulled his patrol car behind Lang and began getting out of it, when Lang put his hand in his pocket. *Id.* The deputy instructed Lang to step over to his patrol vehicle, and Lang began doing so. *Id.* The deputy asked Lang to take his hand out of his pocket, and when Lang did so, Lang threw a pill bottle away. *Id.* This Court held that Lang had "reasonably concluded he was not free to leave" and had commenced complying with the deputy's instructions when he dropped the pill bottle. *Id.* at 294. Therefore, the abandonment of the pill bottle was not voluntary. *Id.* (citing *Hodari D.*, 499 U.S. at 626–29).

By contrast, in *State v. Canada*, 715 So. 2d 1164, 1164–1165 (Fla. 5th DCA 1998), this Court found a voluntary abandonment of contraband where Canada was seated holding a concealed object when police approached him, did not yield to the police request to reveal what he had in his hand, and instead abandoned the object and attempted to flee.

Here, Sapp testified that he ordered Appellant to stop when he found Appellant again near the apartment complex as Sapp was exiting his truck. Appellant stopped and turned towards Sapp and threw an object to the ground. Sapp testified that Appellant threw the object as Sapp was going towards him to arrest him. Sapp then physically restrained Appellant.

Applying the above case law, Appellant had already complied with Sapp's order to stop by stopping and turning towards him. Sapp was in the process of moving to Appellant to arrest him when Appellant threw the pill bottle. It is also noteworthy that Appellant stopped for Sapp for the first time here, whereas he continued to walk away from Sapp earlier when Sapp first saw him in Sapp's neighborhood. Thus, Appellant had

already complied with Sapp's order to stop when Appellant threw the pill bottle. These facts align with *Lang* and are distinguishable from *Canada*. The abandonment of the pill bottle was involuntary. Thus, the discovery of the stun gun on Appellant's person was not part of a lawful search incident to arrest based on the seizure of the pill bottle.

Therefore, because we find that Sapp did not have authority to conduct a citizen's arrest of Appellant and because the stun gun was not seized from Appellant's person as part of a lawful search incident to arrest, we reverse the trial court's order denying the motion to suppress, vacate Appellant's conviction for possession of an electric weapon or device by a convicted felon, and remand the case to the trial court for further proceedings in accordance with this opinion.

REVERSED in part, VACATED in part, and REMANDED with instructions.

JAY, C.J., and MAKAR, JJ., concur.

———————————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

———————————————